WALTER HINES WINTERNITZ *vs*. JOSEPHINE
THOMAS WINTERNITZ.

Hampshire.   October 18, 1984. — January 21, 1985.

Present: BROWN, ROSE, & DREBEN, JJ.

*Jurisdiction*. Long-arm statute, Modification of divorce judgment. *Divorce
and Separation,* Modification of judgment.

In an action by a husband against his former wife, a resident of Virginia, on a
   complaint for modification of his alimony and child support obligation,
   the Probate Court had jurisdiction over the wife under G. L. c. 223A,
   § 3(*a*), where the initial award of support stemmed from the relationship
   and status of the parties while they were domiciled in Massachusetts
   and where the wife, after moving to Virginia, returned to Massachusetts
   and took part in a prior modification action filed by the husband. [230-
   232]
A probate judge exercised appropriate discretion in relieving a husband
   from alimony and child support obligations based on changed circum-
   stances, where the parties' only child was twenty-five years old at the
   time of the hearing and was no longer living at home, and where the
   wife had inherited a substantial sum of money, which she used for
   investment purposes, and had a significantly greater income than at the
   time of prior modification proceedings. [232-233]

LIBEL for divorce filed in the Probate Court for the county
of Hampshire on August 23, 1966.

A complaint for modification filed on May 18, 1983, and
amended on May 20, 1983, was heard by *Andrea F. Nuci-
foro,* J.

*Ellen B. Kaplan* for the defendant.
*Richard M. Howland* for the plaintiff.

BROWN, J. This is an appeal from a judgment eliminating
a husband's support obligations. The wife claims that the Pro-
bate Court lacked jurisdiction over her person and that the trial
judge erred in allowing modification because there had been
no material change in the parties' circumstances. Although we
think that the substantive question raised on appeal is susceptible

to disposition with brief discussion, we first must pause to elaborate on the wife's claim that the Probate Court lacked personal jurisdiction over her.

The parties were divorced in 1966. The decree of divorce nisi awarded custody of the parties' minor child, Felix, to the wife and provided, inter alia, that Walter pay Josephine $400 per month as unallocated alimony and child support. On April 7, 1970, Walter filed a complaint for modification of the support payments. On March 22, 1971, Josephine filed a petition for modification seeking to remove the minor child from Massachusetts to Virginia and a complaint for contempt to enforce the financial orders of the court. On May 11, 1971, a temporary order was entered reducing the amount of unallocated support and granting permission to Josephine to remove the child to Virginia, subject to visitation. The court reserved the right to make further orders relating to alimony, custody, visitation, and support upon the application of either party or of any person on behalf of the minor child. Some time after the order of May 11, but prior to September 28, 1972, Josephine moved to Virginia with Felix.

On October 4, 1972, Walter filed a petition for further hearing regarding the court's financial order. On March 19, 1973, Josephine appeared in the action and also filed a petition alleging that Walter was in contempt of the order of May 11, 1971. On April 19, 1973, after a hearing at which both parties were present and represented by counsel, judgments were entered on the above complaints. Walter was adjudged guilty of contempt. The judge also reduced the support obligation set forth in the divorce decree. Josephine was granted the right to live in Virginia and to exercise her custody in that State subject to visitation rights in Walter.

On May 18, 1983, Walter filed another complaint for modification (amended on May 20). A copy of the complaint was mailed to Josephine by certified mail, return receipt requested. Walter sought elimination of his support obligation and alleged as changes in circumstances that Felix was twenty-four years of age, that Josephine had received a substantial inheritance, and that his own expenses had risen. Thereafter, Josephine, by

special appearance through her attorney, filed a motion to dismiss the complaint, alleging that the court did not have personal jurisdiction over her. On July 12, after a hearing, a probate judge entered an order denying the motion to dismiss and stating that, because Josephine had received notice of the action, due process requirements had been satisfied. The parties were then ordered to complete their pleadings and to try the case on the merits. After a trial (with Josephine present), the judge concluded that the circumstances of the parties had sufficiently changed to warrant the elimination of support.

A. *Personal Jurisdiction.*

Josephine contends that the judge erred in denying her motion to dismiss as the Probate Court lacked jurisdiction over her person.[1] See Mass.R.Dom.Rel.P. 12(b)(2) (1975). "Facing a motion to dismiss under Mass.R.Civ.P. 12(b)(2), the plaintiff[ ] bear[s] the burden of establishing facts on which to predicate jurisdiction over the defendant." *Good Hope Indus., Inc.* v. *Ryder Scott Co:,* 378 Mass. 1, 3 (1979). See also *Balloon Bouquets, Inc.* v. *Balloon Telegram Delivery, Inc.,* 18 Mass. App. Ct. 935 (1984). In our review we focus, as we must, on the prior proceedings and record in the trial court at the time the wife's motion was denied.

This case was argued on the footing that, for personal jurisdiction over a nonresident defendant to attach, the circumstances of the particular case must come within one of the specific subsections of G. L. c. 223A, § 3.[2] *Burtner* v. *Burn-*

---

[1] The order denying Josephine's motion to dismiss was entered on July 12, 1983. Under the anachronistic but still effective terms of G. L. c. 215, § 9, as appearing in St. 1975, c. 400, § 57, a person is entitled to appeal from an "*order,* judgment, decree or denial of a probate court [emphasis supplied]" within thirty days after the entry thereof. See *Borman* v. *Borman,* 378 Mass. 775, 778-780 (1979); *Beit* v. *Probate & Family Court Dept.,* 385 Mass. 854, 857 (1982); *Mancuso* v. *Mancuso,* 10 Mass. App. Ct. 395, 400-402 (1980). An appeal from such an order lies dormant until a final judgment is entered. Although Josephine appealed from the judgment of modification on December 14, 1983, she took no appeal from the order denying her motion to dismiss. We nevertheless address the merits of the jurisdictional claim.

[2] The trial judge did not specify upon which subsection(s) of G. L. c. 223A, § 3, jurisdiction was based.

*ham,* 13 Mass. App. Ct. 158, 161-162 (1982). Cf. *Morrill* v. *Tong,* 390 Mass. 120, 129 (1983). In that context we think the reasoning of *Ross* v. *Ross,* 371 Mass. 439, 441-442 (1976), controls this aspect of the case[3] and that Josephine's activities fall within G. L. c. 223A, § 3(*a*): transacting any business in the Commonwealth.[4] See *Kennedy* v. *Kennedy,* 10 Mass. App. Ct. 113, 119 (1980) (separate support). The phrase "transacting any business" is not limited to commercial activities and has been construed to apply to "any purposeful acts by an individual, whether personal, private, or commercial." *Ross* v. *Ross,* 371 Mass. at 441. It "includes acts which relate to marriage." *Kennedy* v. *Kennedy,* 10 Mass. App. Ct. at 119. *Ross* v. *Ross,* 371 Mass. at 441. In *Ross,* the Supreme Judicial Court held that "the defendant's seeking modification of the original support order and counsel fees was a purposeful act which invoked 'the benefits and protections of [our] laws' [citation omitted]." *Morrill* v. *Tong,* 390 Mass. at 130, quoting from *Ross* v. *Ross,* 371 Mass. at 441-442. Contrast *Morrill* v. *Tong,* 390 Mass. at 129-133.

Josephine had lived in Massachusetts prior to her divorce, was divorced by a decree of a Massachusetts court, and had continued to reside in Massachusetts for approximately six years subsequent to the divorce. After moving to Virginia, Josephine appeared in Walter's 1973 modification action and filed a complaint for contempt.[5] Josephine has been receiving payments continuously from Walter since 1966. It should also be noted that the parties' minor son continued to visit Walter

---

[3] The husband has not argued and we have no occasion to address the question whether the existence of a Massachusetts decree of divorce providing for continuing payments is sufficient to give the Probate Court continuing personal jurisdiction over a nonresident party to the decree. We note, however, that there are persuasive arguments in favor of such continuing jurisdiction. See *Bjordahl* v. *Bjordahl,* 308 N.W.2d 817 (Minn. 1981), cited in *Morrill* v. *Tong,* 390 Mass. 120, 132-133 (1983). See also *Bohner* v. *Bohner,* 18 Mass. App. Ct. 545, 549 n.6 (1984).

[4] The parties have not argued, and we do not consider, the effect of G. L. c. 208, § 36A.

[5] Josephine also invoked the power of the Probate Court through an "application for allowance," filed in January, 1973.

in Massachusetts until 1976 pursuant to the provisions of the 1973 modification decree.

Walter's complaint for modification sought the elimination of child support and alimony. The initial award of child support and alimony stemmed from the relationship and status of the parties while they were domiciled in Massachusetts, and, even after Josephine had removed herself to Virginia, she returned to Massachusetts and took a part in the 1973 proceedings. Consequently, we think that Walter's cause of action "arose from" acts which related to the marital conduct of the parties in Massachusetts. On the record before us, we conclude that there is a sufficient nexus among the defendant, the forum, and the litigation to provide a constitutionally acceptable basis for the trial court to assert jurisdiction under G. L. c. 223A, § 3(*a*).[6]

B. *Change in Circumstances.*

Josephine contends that the trial judge erred in modifying the divorce decree as there had been no material change in the circumstances of the parties. This contention is meritless.

In order for a petitioner to be successful in an action to modify a judgment[7] for alimony or child support, he or she must demonstrate a material change of circumstances since the entry of the earlier judgment. *Schuler* v. *Schuler,* 382 Mass. 366, 368 (1981). "The determination of the extent and palpability of such change, however, lies in large measure within the discretion of the trial judge." *Heistand* v. *Heistand,* 384 Mass. 20, 26 (1981). "There is no inflexible rule constraining the judge's deliberation of the equities of a modification petition. . . . The balance may shift according to the facts of each case." *Id.* at 27.

In the case before us, Felix was twenty-five years old at the time of the hearing and was not living at home. Under the provisions of G. L. c. 208, § 28, Walter was under no legal duty to support him. In addition, Josephine, by her own admis-

---

[6] For this reason, no discussion of the applicability of G. L. c. 223A, § 3(*g*), is necessary.

[7] The nomenclature was changed from "decree" to "judgment" by the Massachusetts Rules of Domestic Relations Procedure adopted in 1975.

sion, had inherited a substantial sum of money which she used for investment purposes and had a significantly greater income in 1983 than in 1973. In these circumstances, the trial judge acted well within his discretion in modifying the judgment of divorce.[8] The fact that Walter's income also may have increased does not preclude modification. Cf. *Thompson* v. *Thompson,* 12 Mass. App. Ct. 917, 918 (1981).

*Judgment affirmed.*

---

[8] The judge certainly could have considered that one of Walter's two children from his second marriage had special needs, requiring Walter to expend substantial sums of money for extensive medical treatment.