Hillman, J.

INTRODUCTION

The plaintiff, Advanced Cell Technology, Inc. (“Advanced Cell”), seeks injunctive relief and monetary damages against the defendant, Infigen, Inc. (“Infigen”) for its alleged breach of a settlement agreement which the parties entered into in August 1999. The equitable relief that they seek, if granted, would compel Infigen to provide Advanced Cell with complete copies of its patent applications concerning nuclear transfer derived cells.
Infigen has moved to dismiss this action on the grounds that this court lacks personal jurisdiction. It has moved in the alternative that these proceedings be dismissed or stayed on a theory of non conveniens.[1] For the reasons set forth below, Infigen, Inc.’s Motion to Dismiss for Lack of Personal Jurisdiction or to Dismiss or Stay Action on Forum non conveniens grounds is DENIED. Additionally, Advanced Cell’s Motion For Preliminary Injunction is DENIED. However, Advanced Cell’s application for an expedited trial contained within the Motion for Preliminary Injunction is ALLOWED.

FACTS

Advanced Cell is a Delaware corporation with usual place of business in Worcester, Massachusetts. Infigen is a Delaware Corporation with a usual place of business in Deforest, Wisconsin. In the summer of 1999, two separate lawsuits involving the parties were pending. Infigen, in a lawsuit filed in the United States District Court for the Western District of Wisconsin (“the Federal case”), claimed that Advanced Cell had infringed upon two of Infigen’s patents. Infigen, Inc. v. Advanced Cell Technology Inc., et al., 98-C-0431. The second lawsuit, filed by Advanced Cell in the Massachusetts Superior Court (“the Massachusetts case”), alleged that Paul J. Golueke, a former employee of Advanced Cell had misappropriated Advanced Cell’s trade secrets. Advanced Cell Technology, Inc., v. Paul J. Golueke et al., CA. 99-0218C.
In August of 1999, the liability phase of the Federal case was resolved in favor of Advanced Cell after a jury trial. Thereafter, the parties entered into settlement negotiations which culminated in a settlement agreement. The details of that agreement were read into the record of the Federal case, and later reduced to writing and filed in that court as a formal Settlement Agreement. In that agreement, Advanced Cell agreed to pay Infigen for a license to its patents and patent applications involving nuclear transfer derived cells. The Settlement Agreement described the license in the following terms:
III. Non-exclusive License Grant.
1. Infingen will grant to Advanced Cell a non-exlusive, royalty free, fully paid up license in and to Infigen’s now pending and future patent applications for seven-and-a-half years from the Effective Date, and issued patents for use in the field for human cell therapy using nuclear-transfer-derived cells.
2. During the term of the license referred to in paragraph 1 above, Advanced Cell may, at its cost, take over prosecution or maintenance of any licensed patent applications or issued patents that Infigen determines not to further prosecute or maintain.
In furtherance of the terms of the settlement agreement, Advanced Cell dismissed the Massachusetts case, paid Infigen hundreds of thousands of dollars, and gave Infigen a security interest in their equipment. Seeking to obtain what they believed to be the benefit of this settlement agreement, they requested the above described patent information. Infigen refuses to provide this patent information, at various times citing different reasons for their refusal. Infigen’s principal claim is that the license to Infigen’s patents that Advanced Cell received is nothing more than a covenant not to sue.
*158 Advanced Cell filed a motion to enforce the terms of the settlement agreement in the United States District Court for the Western District of Wisconsin. On February 14, 2001, the court (Crabb, J.) denied the motion. The court held that it lacked jurisdiction to decide the case because there was no diverse citizenship as both parties are Delaware Corporations, there was no federal question, and the settlement agreement did not expressly reserve jurisdiction to the Federal Court, despite language in the settlement agreement which indicated the parties’ preference to have litigation involving the agreement come before that court.[2] On February 19, 2001, Infigen filed a declaratory judgment action in the Circuit Court of Dane County, Wisconsin. On February 23, 2001, Advanced Cell filed the current action and asks this court to enforce the terms of the settlement agreement. Infigen has filed a motion to dismiss the case based on a lack of personal jurisdiction and on forum non conveniens grounds. In addition to opposing these motions, Advanced Cell has also filed a motion for a preliminary injunction and an expedited trial.

DISCUSSION

I Personal Jurisdiction
A plaintiff against whom a motion to dismiss under Mass.R.Civ.P. 12(b)(2) is filed, bears the burden of showing a proper basis for personal jurisdiction. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 2 (1979). In order to satisfy that burden, the plaintiff must show that: (1) the assertion of jurisdiction is authorized under the Massachusetts longarm statute; and (2) if authorized, the exercise of jurisdiction is consistent with basic due process requirements mandated by the United States Constitution. Id. at 5-6.
A. Long Arm Statute
“General Laws c. 223A, §3(a), the long-arm statute, gives rise to jurisdiction if the defendant either directly or through an agent transacted any business in the Commonwealth, and if the alleged cause of action arose from such transaction of business.” Id. at 6. Massachusetts courts have broadly constructed the “transacting any business” clause of the longarm statute, and this court will apply it to any purposeful acts by an individual, whether personal, private, or commercial. See Tatro v. Manor Care, Inc., 416 Mass 763, 767 (1994); Ross v. Ross, 371 Mass. 439, 441 (1976). While “an isolated transaction without commercial consequences in Massachusetts” may be insufficient to establish jurisdiction, deliberate, non-fortuitous contacts “such that ‘the possible need to invoke the benefits and protections of the forum’s laws was reasonably foreseeable, if not foreseen, rather than a surprise,’ ” are sufficient. See Tatro, 416 Mass. at 767; Good Hope Industries, 378 Mass. at 9-11; see also Bond Leather Co., Inc., 764 F.2d 928, 932 (1st Cir.1985) (court found that four letters and a telephone call are sufficient to satisfy G.L. 223A, §3(a)).
Under G.L.c. 223A, §3(a), a plaintiff is also required to demonstrate that its claims against the defendant “arise from” the defendant’s transaction of business in Massachusetts. The Supreme Judicial Court has interpreted this language as establishing a “but for” test under which “a claim arises from a defendant’s transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State.” See Tatro, 416 Mass. at 770-71; see also Conn. Nat’l Bank v. Hoover Treated Wood Products, Inc., 37 Mass.App.Ct. at 231, 234-35 (1954).
Infigen claims that it has not transacted any business in Massachusetts and therefore is not subject to the personal jurisdiction of this court. Infigen characterizes its contacts with Massachusetts as being limited to entering a settlement agreement with the plaintiff to resolve a patent dispute. However, it also engaged in numerous other business transactions in Massachusetts. These transactions occurred both prior to the underlying litigation and since the parties entered into a settlement agreement.
The initial litigation in this case was partially a result of the defendant recruiting Advanced Cell’s Massachusetts employees. Paul Golueke, one such employee, signed an employment contract with the defendant in Massachusetts. Infigen also sent Advanced Cell a letter, promising to haye Golueke sign an agreement that would discourage him from disclosing certain information to it. These contacts led to the underlying litigation in this case that resulted in the settlement agreement.
After the liability phase of the Federal case Infigen entered into a settlement agreement with Advanced Cell. Under the agreement, Infigen agreed that Advanced Cell would receive a license to its patents and patent applications in exchange for money, a security interest in the Advanced Cell’s equipment located in Massachusetts, and dismissal of the Massachusetts case. From these provisions it is apparent that the defendants contemplated a long-term relationship between the parties.
Since the parties entered into the settlement, there have been further contacts between the parties involving the return of confidential documents and the disclosure of patent application information as required under the contract. Infigen also perfected its security interest in the plaintiffs equipment by filing a UCC-1 form with the Massachusetts Secretary of State. It instructed the Advanced Cell to provide it with cash payments via a wire transfer from a Massachusetts bank. Infigen’s refusal to disclose patent application information has led to the alleged current breach of the settlement agreement.
Here this court finds that the above mentioned contacts that Infigen had with Advanced Cell and its employees is sufficient to satisfy the requirements of G.L.c. 223A, §3(a). Additionally, this court further *159 finds that the nature of the above contacts give rise to the plaintiffs cause of action. The plaintiff alleges a breach of a settlement agreement and much of the dealings between the parties regarding the agreement either took place in Massachusetts or required the assistance of entities located within the Commonwealth.
B. Constitutional Due Process
This court must further determine whether its exercise of personal jurisdiction would satisfy the due process clause of the Fourteenth Amendment, that requires that the defendant have “minimum contacts” with the forum state in order for the state to exercise jurisdiction over the defendant. See Tatro, 416 Mass. at 772-73; Ross, 371 Mass. at 441. A court may assert personal jurisdiction where the defendant has certain minimum contacts with the forum state such that the lawsuit does not “offend traditional notions of fair play and substantial justice.” See International Shoe Co. v. Washington, 326 U.S. 310, 3116 (1945). These minimum contacts must be such that the defendant could reasonably anticipate being brought into the court. Burger King Corp. v Rudzewick, 471 U.S. 462, 747 (1985). In order to satisfy this standard, the defendant must have “purposefully [availed itself] of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws” making the defendant’s required presence before the state’s court reasonably foreseeable. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Hanson v. Denokla, 357 U.S. 235, 253 (1958). The plaintiff has met its burden if the defendant’s contacts with the forum were deliberate and not fortuitous, so that the defendant could reasonably foresee the possible need to invoke the benefits of the forum state. See Good Hope Industries, Inc., 378 Mass. at 11.
Infigen alleges that it could not reasonably anticipate being brought into Massachusetts state court based on its alleged breach of the settlement agreement because it took no actions with respect to the settlement agreement to invoke the benefits or protection of Massachusetts law. However, as stated in the above discussion of the longarm statute, Infigen took numerous voluntary actions making it foreseeable that it could be brought into a Massachusetts court. The effectuation of the settlement agreement required contact between the parties in Massachusetts or at the very least the assistance of Massachusetts entities. Therefore, Advanced Cell has sufficiently established that this court has personal jurisdiction over the defendants.[3]
Ill. Forum Non Conveniens
Infigen also argues that the case should be dismissed or stayed based on a theory of forum non conveniens, under which a court may decline jurisdiction that is constitutionally permissible if another State is better situated to address the matter. General Laws c. 223A, §5 allows this court to stay or dismiss the action in whole or in part if it finds that it is in the interest of substantial justice that the action should be heard in another forum. In making this determination, this court must consider many factors, both private and public. See W.R. Grace & Co. v. Hartford Accident & Indemnity Co., 407 Mass. 572, 578-78 (1990).
Infigen argues that an earlier-filed action involving the same parties and the same dispute is proceeding in a Wisconsin State Court, and that court is the more appropriate court to hear the action because the settlement agreement was negotiated, executed and allegedly breached in Wisconsin, making it likely that Wisconsin law will apply in the case. However, since the defendant filed the current motion, the Wisconsin action has been dismissed.[4]
Infigen also argues that it is desirable to have a trial in a forum that is familiar with the applicable law and questions this court’s ability to hear this case which may require the application of Wisconsin law. However, there is no reason to doubt that this court will be able to apply Wisconsin law, if that is to be the law which governs this case. Furthermore, Massachusetts law may govern this case. In the absence of any other arguments in support of the motion to dismiss or stay the case based on a theoiy of forum non conveniens, this court is competent to hear the case and therefore, this motion is denied.
III. Preliminary Injunction
The plaintiff has moved for a preliminary injunction to compel Infigen to honor its obligations under the settlement agreements. More specifically, Advanced Cell is seeking that this court compel Infigen to disclose patent application information concerning nuclear transfer derived cells to Advanced Cell.
In determining whether to grant a preliminary injunction, this court considers, the balancing test set forth in Packaging Industrial Group v. Cheney, 380 Mass. 609, 616-17 (1980). First, the court must evaluate “the moving party’s claim of injury and its chance of success on the merits." Id. If failing to issue the injunction “would subject the moving party to a substantial risk of irreparable harm, this court must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by final judgment rendered either at law or in equity. Cheney, supra at 617. Moreover, in appropriate cases, the court should also consider the risk of harm to the public interest. Id. Finally, a preliminary injunction is a dramatic remedy that a court should not grant unless the movant, by a clear showing, carries the burden of persuasion. Charles Wright and Arthur Miller, 11 Federal Practice and Procedure, §2948 (1995).
*160 While this court feels that the plaintiff has a good chance of success on the merits, a grant of the relief that the plaintiff seeks would end this litigation without allowing for a full and complete hearing on the defendant’s claim that a non-exclusive licence is merely a covenant not to sue. Under the terms of the settlement agreement, Infigen is to give Advanced Cell a license in Infigen’s “now pending and future patent applications,” its issued patents, and the right to take over prosecution and maintenance of any licenced Infigen patent applications or issued patents that Infigen determines not to further prosecute or maintain. It is likely that Advanced Cell will succeed in arguing that if Infigen did not want Advanced Cell to have access to these patents, they should not have entered an agreement that clearly allows for this very action. Advanced Cell will also likely be successful in arguing that the license covers patent applications and existing patents and that because the settlement agreements provide for Advanced Cell to have the option of prosecuting any patent applications that Infigen declines to pursue, information regarding those patent applications must be disclosed to Advanced Cell, so they can exercise their option. Based on this court’s reading of the settlement agreement, it is likely that Advanced Cell will succeed on the merits of their claim.
However, this court is compelled to balance this argument against Infigen’s claim that granting the injunction would effectively end the litigation by compelling Infigen to disclose confidential patent applications that are the subject of the dispute, thus creating an irreparable harm. Once disclosed, this information could no longer be made secret. Furthermore, Infigen argues in response to Advanced Cell’s request for a preliminary injunction, that the non-exclusive licence provision is nothing more than a covenant not to sue. According to Infigen, the settlement agreement means that Infigen agrees not to sue Advanced Cell based on its use of Infigen’s patents. While it is likely that Advanced Cell will succeed on the merits of their claim, the meaning of the settlement agreement is a fact that needs to be further developed before this court can address the legal issues. Therefore, while this balancing act comes out in favor of Infigen, and this court must deny the preliminary injunction, it also recognizes the need for an expedited trial, so the factual issues surrounding the settlement agreement can be developed. This court orders this case be put on for trial on January 7, 2002 with no further delay.
ORDER
For the above reasons, it is hereby ORDERED that the Defendant’s Motion to Dismiss for Lack of Personal Jurisdiction or to Dismiss or Stay Action on Forum Non Conveniens Grounds be DENIED, and the Plaintiffs Motion for Preliminary Injunction also be DENIED. It is further ordered that the Plaintiffs Motion for Expedited Trial is ALLOWED, and this case shall be called for trial on Monday, January 7, 2002.

 Plaintiffs Motion for Preliminary Injunction and Expedited Trial and Defendant Infigen, Inc.’s Motion to Dismiss for Lack of Personal Jurisdiction or to Dismiss or Stay Action on Forum Non Conveniens Grounds.

 Provisions of the argument state "jurisdiction and venue to enforce the provisions set forth above shall be in the Western District of Wisconsin,” and “[t]he parties expressly agree that the Agreement shall be enforceable in Federal Court in Madison, Wisconsin, before Judge Crabb, who will retain jurisdiction for purposes of enforcing this Agreement.”

 The defendant, alternatively, argues in the current motion that the forum selection language In the settlement agreement limits the jurisdiction and venue to enforce the provisions of the settlement agreement to Wisconsin, and therefore, the action should be stayed or dismissed. However, the Federal Court for the Western District of Wisconsin concluded that it lacked the jurisdiction to enforce the settlement agreement. Furthermore the jurisdictional clauses in the settlement agreement do not confer exclusive jurisdiction on the Wisconsin Federal Court.

 In a decision dated October 10, 2001, that court found that it did not have personal jurisdiction over Advanced Cell and dismissed the complaint. Infigen, Inc. v Advanced Cell Technology Inc,, 01CV-0479, Dane County Circuit Court.