Winslow, J.
The plaintiff, Joseph Ureneck as assignee of Rainbow Marriage International Marriage Service Incorporated (“Rainbow”), appeals from a dismissal for lack of personal jurisdiction over the defendant, Xu Yingnong (“Ms. Xu”), a California resident Rainbow seeks to collect contract damages under a marriage brokerage agreement as a result of Ms. Xu’s marriage to a man to whom she was introduced by Rainbow. For the reasons stated below, we affirm dismissal for lack of personal jurisdiction.
Based on the contract and undisputed facts of the parties’ affidavits, the district court justice could have considered the following facts in support of dismissal: Rainbow, a Massachusetts corporation with offices in Massachusetts and Beijing, China, contracted with Ms. Xu in China to provide matchmaking services to prospective marriage partners. At the time of the execution of the contract and at all times relevant to her receipt of services from Rainbow, Ms. Xu was a resident of China. The agreement identified Rainbow as “a US company” but did not include any mention of the Commonwealth of Massachusetts. Rainbow’s representative informed Ms. Xu at the time she signed the agreement that Rainbow was a Massachusetts corporation with only a Massachusetts office in the United States and that Rainbow would use its resources in Massachusetts to provide services to her. Ms. Xu agreed to pay an initial registration fee as well as other charges. Significantly, Ms. Xu agreed to pay $8,500 in the event of her marriage to a person introduced by Rainbow in addition to the other fees.[1] The agreement also provided that
settlement of any disputes regarding this agreement shall be settled in that country and state in which (1) client holds legal residency and country in which client’s spouse holds nationality or (2) in that country in which clients spouse holds nationality....
Rainbow performed introduction services for Ms. Xu for at least twenty months, culminating in her marriage to a man from California Ms. Xu left China and moved to California where she now resides. Rainbow seeks to collect the $8,500 *142 fee arising from Ms. Xu's marriage to the man from California. Both Ms. Xu and Rainbow have limited financial resources which would make litigation outside the state of their residence financially impracticable.
“Generally, a claim of personal jurisdiction over a non-resident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by [the long-arm] statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?” Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). “Jurisdiction is permissible only when both questions draw affirmative responses.” Good Hope Indus., 378 Mass. at 6. “[Ijnquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case. Facing a motion to dismiss under Mass. R. Civ. P., Rule 12(b) (2), the plaintiffs bear the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant” Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 2 (1979) [internal citations omitted]. “General Laws c. 223A, §3, sets out a list of specific instances in which a Massachusetts court may acquire personal jurisdiction over a nonresident defendant Jurisdiction is conferred only “when some basis for jurisdiction enumerated in the statute has been established.’ Good Hope Indus., Inc., 378 Mass. at 6. Carlson Corp. v. University of Vt., 380 Mass. 102, 105 (1980). If the literal requirements of the statute are satisfied, it álso must be established that ‘the exerdse of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution.’ Good Hope Indus., Inc., 378 Mass. at 5-6.” Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). Each will be addressed in turn below.
G.L.c. 223A, §3: Long-Arm Statute
The Massachusetts long-arm statute provides in relevant part that a “court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from that person’s (a) transacting any business in the commonwealth....” G.L.c. 223A §3. “For jurisdiction to exist under §3(a), the facts must satisfy two requirements — the defendant must have transacted business in Massachusetts, and the plaintiff’s claim must have arisen from the transaction of business by the defendant The ‘transacting any business’ clause [in §3] has been construed broadly. Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement” Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994) [internal citations omitted]. “[A] claim arises from a defendant’s transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State.” Tatro, 416 Mass. at 771, citing Lanier v. Am. Bd. of Endodontics, 843 F.2d 901, 909 (6th Cir.), cert. denied, 488 U.S. 926 (1988), interpreting the Michigan long-arm statute, and “applies to any purposeful acts by an individual, whether personal, private, or commercial.” Ross v. Ross, 371 Mass. 439, 441 (1976).
Constitutional limitations
“The Due Process Clause protects an individual’s liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful ‘contacts, ties, or relations.’ International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). By requiring that individuals have ‘fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign,’ Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment), the Due Process Clause ‘gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit,’ *143 World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-472 (1985). And see Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH & Co. KG., 26 Mass. App. Ct. 14, 21 (1988).
“The dual constitutional elements are ‘minimum contacts’ and ‘reasonableness.’” The former is justified thus in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-292 (1980):
[MJinimum contacts... can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system....
Sonesta Intern. Hotels Corp. v. C. Fla. Inv., Inc., 47 Mass. App. Ct. 154, 162 (1999). “The governing principle is the fairness of subjecting [Ms. Xu] to suit in a distant forum. Only if the nonresident defendant has such ‘minimum contacts’ with the state ‘that the maintenance of the suit does not offend traditional notions of fair play and justice,’ International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), or if the defendant has performed some act “by which [she] purposefully avails [her] self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,’ Hanson v. Denckla, 357 U.S. 235, 253 (1958); McGee v. International Life Insurance Co., 355 U.S. 220 (1957).” Good Hope Indus., Inc., 378 Mass. at 7, would Massachusetts courts have personal jurisdiction over the defendant The plaintiff’s claim must arise out of, or relate to, the defendants forum contacts. See Burger King Corp. v. Rudzewicz, supra at 472; United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-1089 (1st Cir. 1992), appeal after remand, 987 F.2d 39 (1st Cir. 1993).
“As to ‘reasonableness,’ the burden is on the defendant to show the assertion of jurisdiction against it would be unreasonable. See Burger King Corp., supra at 477, and the showing would have to take in not only the factor of the defendant’s convenience, but also the interests of the plaintiff and the public. World-Wide Volkswagen, 444 U.S. at 292.” Sonesta Intern. Hotels Corp. v. C. Fla. Inv., Inc., 47 Mass. App. Ct. 154, 162 (1999). “In addition, the assertion of jurisdiction over the defendant must not offend ‘traditional notions of fair play and substantial justice.’ International Shoe Co. v. Washington, supra at 316, 66 S. Ct. at 158, quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940). Asahi Metal Indus. Co., supra at 113, 107 S. Ct. at 1033. In practical terms, this means that an assertion of jurisdiction must be tested for its reasonableness, taking into account such factors as the burden on the defendant of litigating in the plaintiff’s chosen forum, the forum State’s interest in adjudicating the dispute, and the plaintiffs interest in obtaining relief.” Tatro v. Manor Care, Inc., 416 Mass. 763, 773 (1994).
Even if we were to assume, without deciding, that Ms. Xu transacted business in the Commonwealth of Massachusetts by contracting with a Massachusetts corporation for services to be rendered at least in part in Massachusetts, Rainbow’s claim cannot withstand constitutional scrutiny. At best, Ms. Xu’s contacts with the forum were fortuitous and not deliberate. Compare Haddad v. Taylor, 32 Mass. App. Ct. 332, 336 (1992). There was no negotiation of the terms of the preprinted agreement in Massachusetts and the contract was presented to Ms. Xu and signed by her in China. All services provided to Ms. Xu were provided while she resided in China. Ms. Xu’s dealings with Rainbow are similar to those of the parties in ‘Automatic’ Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441 (1972). In Automatic Sprinkler, the Supreme Judicial Court denied personal jurisdiction where the defendants Massachusetts contacts simply were “in the nature of affirming a contract and making payments through the mail.” ‘Automatic’ Sprin *144 kler Corp., 361 Mass. at 445. See also Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 154 (1978). The record is devoid of contacts by Ms. Xu with Massachusetts: she is not a resident of Massachusetts and never has been to the state; she remained in China throughout the relevant period of her receipt of services from Rainbow, the contract was executed in China, and the forum selection clause of the contract purports to require litigation in the “country and state in which (1) client holds legal residency and country in which client’s spouse holds nationality or (2) in that country in which client’s spouse holds nationality.” Clause (1) would require this action to be filed in the State of California, where Ms. Xu resides with her husband. In the face of its forum selection language in the contract, Rainbow cannot be heard to complain that the California forum is impractical. Moreover, the forum selection language reasonably would cause Ms. Xu to expect that any dispute regarding the contract would be litigated in the state of her husband’s residence. It is California, not Massachusetts, that has the greatest connection with the marriage that lies at the heart of the contractual dispute. See, e.g., Rainbow International Marriage Service v. Cui, 2002 Mass. App. Div. 34 (“The sanctity of the marriage relationship has historically been at the foundation of the welfare of the state, and the law has therefore looked with jealous regard at bargains concerning that relationship.”) Taking these interests and contacts into account, Ms. Xu has demonstrated that litigation in this forum is not reasonable and that the action properly belongs elsewhere.
Accordingly, the dismissal for lack of personal jurisdiction is affirmed.
So ordered.

 We recently considered the propriety of Rainbow’s marriage brokerage agreement in Rainbow International Marriage Service v. Cui, 2002 Mass. App. Div. 34, holding that the agreement assessing fees conditioned on marriage to a particular person was void as against public policy. This appeal raises threshold issues of personal jurisdiction which do not require us to revisit the public policy concerns addressed in the earlier opinion.